[739 NYS2d 116]

Barbara K. Silber et al., Appellants, v Barbara A. Silber et al., Respondents, and Jeffrey Silber et al., Intervenors-Respondents.

First Department, February 26, 2002

### APPEARANCES OF COUNSEL

*Martin Nardi Gamliel* for appellants.

*Morton J. Turchin* of counsel (*Turchin & Hoffman, P.C.,* attorneys), for Barbara A. Silber, respondent, and intervenors-respondents.

No appearances for remaining respondents.

### OPINION OF THE COURT

WILLIAMS, J. P.

The main issue presented by this appeal is whether, as a matter of law, the waiver provisions of a Qualified Domestic Relations Order (QUADRO), executed by an ex-spouse in consideration for her ex-husband providing her with a lump-sum payment during his lifetime, constitutes an effective renunciation of her earlier designation as death beneficiary of his pension plan.

As a result of Dr. Robert Silber's employment on the staff of New York University Medical Center, he acquired a pension managed by Teachers Insurance Annuity Association and College Retirement Equity Fund (TIAA-CREF). When Dr. Silber divorced Barbara A. Silber in late 1985, they had been married for 31 years and had four children. In 1967, he had designated her on the appropriate TIAA-CREF form as beneficiary of his pension death benefits, with their children as contingent beneficiaries. Shortly before the divorce, he removed her as beneficiary, but soon thereafter restored the original designation. After the divorce, he changed the designation form again, as called for by the parties' stipulation in the divorce judgment, and designated her as the 50% beneficiary of his pension fund death benefits.

In April 1992, Dr. Silber married his second wife, Barbara K. Silber. Subsequently, in May of 1993, he executed a change of

beneficiary form designating his first and second wives each as a 50% beneficiary and his four children by the first wife contingent beneficiaries.

In April 1998, Dr. Silber acceded to the first wife's request to enter the QUADRO, which was so-ordered on May 12, 1998. The sole asset it addressed was his pension retirement benefits, and it specifically referenced the Employee Retirement Income Security Act (ERISA) and Domestic Relations Law § 236 (B). It assigned to the first wife, as her "sole and exclusive property," a newly issued annuity created from a lump-sum, inter vivos transfer of 45% of the accumulations under his pension plan, an interest valued at $925,116.55 at the time of transfer. It also included the following provisions:

> "8. This [QUADRO] supercedes all prior * * * agreements of the parties and neither party shall have any further rights against the other * * * under any of the agreements * * * Any further rights any party has against the other or against their respective estates shall arise solely under this [QUADRO].

> "9. Each party expressly waives any rights against the other and the other's estate and releases the other and the other's estate from all claims, except for those rights and claims under this [QUADRO].

> "10. Participant's present wife, Barbara K. Silber, has signed this Order as a party and hereby waives any claim she might have to any part of Participant's Pension Plan that is being assigned to [Barbara A. Silber]. Barbara A. Silber waives any rights or claims she might presently have against Barbara K. Silber on [sic] her estate."

The pension fund, in a letter to Dr. Silber dated July 13, 1998, confirmed the arrangement stated in the QUADRO and suggested that "[i]f you have not already done so, you may want to change the beneficiaries of your annuity contracts. If you choose to change your beneficiaries, please complete the enclosed change of beneficiary form." It should be noted that the pension fund required that changes of beneficiary be made by written notice "in a form satisfactory to [the fund]" and that such changes were to be "effective from the date signed." On several prior occasions when Dr. Silber had sought to change beneficiaries, the pension fund had reminded him by written notice that he had to complete a new designation form and he did so.

Dr. Silber died on November 3, 1998. His second wife was named executrix of his estate, and shortly after his will was admitted to probate, she commenced this action, seeking, inter alia, a declaration that she is entitled to 100% of the TIAA-CREF death benefits retained by Dr. Silber and alleging, inter alia, that the QUADRO constituted a waiver and full discharge of the first wife's rights in the death benefits, and that the change of beneficiary forms executed in 1993 were superceded by the QUADRO.

Subsequently, the first wife moved for summary judgment granting her 50% of Dr. Silber's death benefits, pursuant to the last change of beneficiary form filed with the pension fund. She essentially argued that the QUADRO did not effect a change of beneficiary, that the husband was aware, as evidenced by his prior conduct, that the only way to do so was by completing and filing the pension fund's change of beneficiary form, and that he simply did not do so after the 1993 change.

The second wife cross-moved for summary judgment precluding the first wife from any share in the death benefit, arguing that the QUADRO constituted a valid waiver of any interest the first wife had in Dr. Silber's death benefits, and that it was sufficiently specific to effect a valid modification of the pension plan beneficiary designation, thus rendering unnecessary the filing of a change of beneficiary form for that transaction.

The court granted the first wife's summary judgment motion and dismissed the second wife's complaint. It found that the language in the QUADRO was insufficiently specific in referring to the benefits in question to modify the 1993 designation of beneficiary or to waive the first wife's interest in the death benefit. It further read the QUADRO as addressing Dr. Silber's "estate," as opposed to his pension plan, dismissed as unsubstantiated the second wife's allegation that Dr. Silber had in fact submitted a change of beneficiary form subsequent to the QUADRO, designating her the sole beneficiary of his death benefit, and opined, in dicta, that if the waiver of death benefits by the first wife was valid, her children would take her share as contingent beneficiaries.

In our view, the motion court erred in granting summary judgment to Barbara A. Silber, the decedent's first wife. That determination flies in the face of the intent of the parties to the QUADRO, the intent underlying the ERISA exception providing for QUADRO, and the federal common law on the issue of waiver in this context.

ERISA was enacted as a comprehensive federal scheme to protect participants and beneficiaries of employee pension

plans (*Manning v Hayes*, 212 F3d 866, 870, *cert denied* 532 US 941). It expansively preempts state law in this regard (29 USC § 1144 [a]; *Egelhoff v Egelhoff*, 532 US 141; *New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co.*, 514 US 645, 655). In keeping with its fundamental purpose, ERISA generally prohibits the alienation of a beneficial interest in pension plans within its coverage (29 USC § 1056 [d] [1]). However, it was expressly amended to include an exception to this rule by providing that a QUADRO, a domestic relations order which meets certain requirements, can serve as a vehicle for parties involved in domestic relations proceedings to make dispositions of plan assets (29 USC § 1056 [d] [3]; *Estate of Altobelli v International Bus. Machs. Corp.*, 77 F3d 78, 81-82; *Carland v Metropolitan Life Ins. Co.*, 935 F2d 1114, 1119, *cert denied* 502 US 1020). A QUADRO is also exempt from ERISA preemption (29 USC § 1144 [b] [7]; *Carland v Metropolitan Life Ins. Co.*, *supra* at 1119-1120).

Where ERISA does not expressly address a particular issue related to its subject matter, resort may be had to federal common law (*Estate of Altobelli*, *supra* at 80, citing *Phoenix Mut. Life Ins. Co. v Adams*, 30 F3d 554, 562). One such issue is whether a former spouse designated as the primary beneficiary of an ERISA pension plan can waive rights to pension proceeds (*Brandon v Travelers Ins. Co.*, 18 F3d 1321, 1326, *cert denied* 513 US 1081; *Fox Val. & Vicinity Constr. Workers Pension Fund v Brown*, 897 F2d 275, 278, *cert denied* 498 US 820; *Lyman Lbr. Co. v Hill*, 877 F2d 692, 693), an issue upon which the Federal circuit courts are divided as to whether guidance may be reasonably drawn from the text of ERISA itself (*see*, 29 USC § 1104 [a] [1] [D]) or should be drawn from federal common law (*Estate of Altobelli* at 81; *see also*, *Manning v Hayes*, *supra* at 870-874; *Brandon v Travelers Ins. Co.*, *supra* at 1325-1327), the latter view being the majority view. The federal common-law rule governing a plan beneficiary's waiver of benefits is that a valid waiver must be "explicit, voluntary, and made in good faith" (*Brandon v Travelers Ins. Co.*, *supra* at 1327, citing *Fox Val. & Vicinity Constr. Workers Pension Fund v Brown*, 897 F2d 275, *cert denied* 498 US 820, and *Lyman Lbr. Co. v Hill*, 877 F2d 692). It is not necessary that "proceeds" or "beneficiary interest" be specifically listed in order to accomplish an effective waiver of a beneficiary interest. "We will only find waiver if, upon reading the language * * * a reasonable person would have understood that she was waiving her

beneficiary interest in the [plan benefits] at issue" (*Clift v Clift*, 210 F3d 268, 271-272).

When this rule is applied to the waiver language at issue, it is clear that the motion court erred in finding it insufficient to effectuate a waiver. Essentially, the court failed to consider the QUADRO as a whole. The QUADRO complied with all the requirements listed at 29 USC § 1056 (d) (3), thus fulfilling the ERISA policy goal of providing "all the necessary information to determine the identity of a beneficiary without creating unreasonable administrative burdens for the plan administrator" (*Carland v Metropolitan Life Ins. Co.*, *supra* at 1120). While the motion court focused its analysis on paragraph 9, it appeared to pay little heed to the remainder of the document, such as its preamble, which clearly states that the QUADRO addresses Dr. Silber's benefits under the TIAA-CREF pension plan and the first three paragraphs, which state exactly which annuity contracts are involved and who takes what percentage of them. At paragraph 3, it expressly provides that "[a]ll ownership and interest" in the pension plan, after the transfer of 45% to Barbara A. Silber, was to revert to the husband. Paragraphs 8 and 10 (*supra*), more fully define the scope of the waiver, and paragraph 10 contains mutual waivers between the first and second wives, including a waiver of claims against "[plaintiff] on [sic] her estate." Both wives are signatories to the QUADRO. Given the foregoing, the fact that Barbara A. Silber was represented by an attorney and that the QUADRO was entered into at her request, the waiver would appear to be "explicit, voluntary, and made in good faith" and should have been enforced as a plan document in accordance with Congress' intent (*see, Carland v Metropolitan Life Ins. Co.*, *supra* at 1121).

It should also be noted that in similar circumstances a New York Court has previously upheld a waiver of pension benefits in a QUADRO, holding that

> "In receiving the benefit of the [QUADRO] and in executing the release, [the ex-spouse] 'received the consideration bargained for, and she became bound to fulfill her promise not to make [a] claim for retirement program death benefits'" (*Doyle v Sullivan*, 176 AD2d 55, 57-58 [4th Dept], quoting *Curley v Giltrop*, 68 NY2d 651, 654, *rearg denied* 68 NY2d 754).

The court further misconstrued the QUADRO by reading the term "estate" in paragraph 9 in an unduly narrow, technical

way such that the scope of the waiver was limited. The assumption that the technical definition of "estate" was intended because it was drafted by lawyers was unsubstantiated and muddles the plain meaning of the agreement. Finally, the court's dictum, to the effect that the children's contingency interest in the death benefit would be subordinate only to the first wife's alleged interest therein, failed to take into account the language of the relevant TIAA-CREF provisions as well as the last change of beneficiary form, dated May 20, 1993, which made the children's interests subordinate to those of both wives.

Our analysis in this matter is not affected by the recent United States Supreme Court decision in *Egelhoff v Egelhoff* (532 US 141). The *Egelhoff* decision, addressing the issue of whether a state statute affecting the designation of beneficiaries should be preempted by ERISA, held that the statute at issue conflicted with and was superceded by the plain text of ERISA. As noted *supra*, preemption is not an issue here, since a QUADRO is exempted from ERISA's preemption provision (29 USC § 1144 [b] [7]). The question as to the source of federal law used to determine the plan beneficiary was not at issue in *Egelhoff*, and the fact that the court relied on plan documents to determine the beneficiary is not inconsistent with our decision, since a QUADRO that is duly executed and filed with the pension plan, as in the case at bar, becomes a de facto plan document (*see,* 29 USC § 1056 [d] [3] [G] *et seq.*; *Carland v Metropolitan Life Ins. Co.*, *supra* at 1121-1122).

For similar reasons, our analysis is not affected by the Second Circuit decision, *Krishna v Colgate Palmolive Co.* (7 F3d 11), in which the court found that the District Court's reliance on state testamentary case law to permit a decedent's use of a will provision to change the beneficiary of his ERISA-governed life insurance policy conflicted with and was preempted by ERISA. The case did not involve a QUADRO or waiver, renunciation or release by a spousal beneficiary. The court reversed and remanded for further proceedings; hence its indication of its preference for the federal common-law minority rule, reading ERISA at 29 USC § 1104 (a) (1) (D) as mandating strict adherence to the plan's governing documents and rules, was mere dictum.

Accordingly, order and judgment (one paper), Supreme Court, New York County (Herman Cahn, J.), entered June 7, 2001, which, inter alia, granted defendant Barbara A. Silber's motion for summary judgment declaring her to be entitled to

the disputed pension benefits pursuant to the May 20, 1993 beneficiary designation form on file with the husband's pension plan and dismissed the complaint, and denied plaintiff Barbara K. Silber's cross motion for summary judgment, should be reversed, on the law, with costs, the motion of defendant Barbara A. Silber denied, the cross motion of plaintiff Barbara K. Silber for summary judgment granted, and it is declared that plaintiff is entitled to the pension benefits, and defendants-intervenors' counterclaim for entitlement and distribution of death benefits dismissed.

ANDRIAS, SAXE, WALLACH and LERNER, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered June 7, 2001, reversed, on the law, with costs, the motion of defendant Barbara A. Silber for summary judgment declaring her to be entitled to the disputed pension benefits pursuant to a certain beneficiary designation form on file with the husband's pension plan denied, the cross motion of plaintiff Barbara K. Silber for summary judgment granted, and it is declared that plaintiff is entitled to the pension benefits, and defendants-intervenors' counterclaim for entitlement and distribution of death benefits dismissed.