OPINION OF THE COURT
 

 Ciparick, J.
 

 In the 1960s, Dr. Robert Silber enrolled in two annuity pension plans with the Teachers Insurance and Annuity Association (TIAA) and the College Retirement Equities Fund (CREF). At the time of his enrollment, Silber designated his then-wife, defendant Barbara A. Silber, primary beneficiary of the TIAA-CREF plans, and his children contingent beneficiaries. Both plan contracts required that changes to beneficiary designations be made by filing written notice'with TIAA-CREF, at their home office, in a form satisfactory to the plan administrator. Over the ensuing years, Silber several times made changes to his beneficiary designation by using a TIAA-CREF form entitled “Designation of Beneficiary.”
 

 The Silbers divorced in December 1985. The divorce decree required that Barbara A. receive 25% of any TIAA-CREF retirement benefits received during Silber’s lifetime and that he designate her as a 50% beneficiary of his death benefits in the event he died before retirement. In April 1986, Silber filed the required beneficiary designation form with TIAA-CREF naming his ex-wife as 50% beneficiary of his death benefits with his four children and a friend sharing the remaining 50% in varying proportions. Silber made other changes to his beneficiary designation after the divorce, all the while maintaining Barbara A. as a 50% beneficiary of his death benefits, as required by the divorce decree.
 

 
 *399
 
 In April 1992, Silber married plaintiff Barbara K. Silber. Thereafter, he made two changes to his death benefit beneficiary designation using TIAA-CREF beneficiary designation forms. The final change, signed on June 3, 1993, named both Barbara A. and Barbara K. as 50% beneficiaries, with the four children from the first marriage as contingent beneficiaries.
 

 Silber had not retired by 1998. At the behest of defendant Barbara A. and her lawyer, the parties entered into an agreement creating separate annuities in Barbara A.’s name, providing her with immediate access to benefit payments. The new annuities were funded with 45% of the accumulations from Silber’s TIAA-CREF pension plans. Approximately $925,000 of the accumulations funded the new annuities. The agreement, which was incorporated into a qualified domestic relations order (QDRO), provided:
 

 “3. * * * All ownership rights in the newly issued annuities will belong to Alternate Payee [Barbara A. Silber]. All ownership and interest in the balance of the accumulations in all contracts issued by the Pension Plan [TIAA-CREF] will belong to Participant [Robert Silber]. * * *
 

 “8. This Qualified Domestic Relations Order supersedes all prior orders or judgments of this Court and all prior agreements of the parties and neither party shall have any further rights against the other either finder any of the prior orders or judgments of this Court or under any of the agreements between them all of which rights and/or obligations arising thereunder have been previously fully executed and satisfied. Any further rights either party has against the other or against their respective estates shall arise solely under this Qualified Domestic Relations Order.
 

 “9. Each party expressly waives any rights against the other and the other’s estate and releases the other and the other’s estate from all claims, except for those rights and claims under this Qualified Domestic Relations Order.
 

 “10. Participant’s present wife, Barbara K. Silber, has signed this Order as a party and hereby waives any claim she might have to any part of Participant’s Pension Plan that is being assigned to
 
 *400
 
 Alternate Payee herein. Barbara A. Silber waives any rights or claims she might presently have against Barbara K. Silber on her estate.”
 

 The agreement was signed by Robert Silber, Barbara A. Silber and Barbara K. Silber, as well as their respective attorneys. The QDRO was “so ordered” by a justice of the Supreme Court on May 12, 1998. On June 23, it was delivered to the TIAA-CREF plan administrator who acknowledged its receipt and agreed to “comply with all the applicable terms and conditions of said Order.”
 

 In a letter to Silber dated July 13, TIAA-CREF made reference to the QDRO and stated “[i]f you have not already done so, you may want to change the beneficiaries of your annuity contracts. If you choose to change your beneficiaries, please complete the enclosed change of beneficiary form.” Silber never returned the form to TIAA-CREF, and died on November 3, 1998.
 

 In accordance with the last beneficiary designation, TIAA-CREF distributed 50% of both plans’ death benefits to plaintiff Barbara K. but did not distribute the remaining 50%. Barbara K. then commenced this action, both in her individual capacity and as executrix of her husband’s estate, seeking a declaration that she was entitled to all of the TIAA-CREF death benefits. Both parties sought summary judgment — Barbara A. on the basis of the June 3, 1993 beneficiary designation, naming her as a 50% beneficiary, and Barbara K. on the ground that Barbara A. waived her right to death benefits in the May 1998 QDRO and that the QDRO itself effected a new beneficiary designation.
 

 Supreme Court granted Barbara A.’s motion, concluding that the language of the QDRO was not sufficiently specific to constitute a waiver. The Appellate Division reversed, following a majority of federal circuits holding that a waiver can be accomplished by an agreement that is explicit, voluntary and made in good faith — as occurred here (290 AD2d 156 [2002]). We now affirm.
 

 Discussion
 

 The Employee Retirement Income Security Act of 1974 (29 USC § 1001
 
 et seq.
 
 [ERISA]) is a comprehensive federal statute “designed to promote the interests of employees and their beneficiaries in employee benefit plans”
 
 (McCoy v Feinman,
 
 99 NY2d 295, 304 n 3 [2002]). ERISA provides “a uniform
 
 *401
 
 administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits”
 
 (Egelhoff v Egelhoff ex rel. Breiner,
 
 532 US 141, 148 [2001], quoting
 
 Fort Halifax Packing Co., Inc. v Coyne,
 
 482 US 1, 9 [1987]). In furtherance of the goal of uniformity, ERISA preempts “any and all State laws insofar as they may now or hereafter relate to any employee benefit plan” (29 USC § 1144 [a];
 
 see also Pilot Life Ins. Co. v Dedeaux,
 
 481 US 41, 45-46 [1987]).
 

 A state law is related to plan administration, and thus preempted by ERISA, if the law “has a connection with or reference to such a plan”
 
 (Shaw v Delta Air Lines, Inc.,
 
 463 US 85, 97 [1983]). Thus, where a state statute purports to designate the beneficiaries of an ERISA plan in a manner not provided under the ERISA scheme, it will be preempted
 
 (see Egelhoff,
 
 532 US at 148). Likewise, where a body of law traditionally reserved to the states, such as the law of testamentary transfers, alters the designation of a beneficiary in a manner inconsistent with uniform nationwide plan administration, it too will be preempted
 
 (see Krishna v Colgate Palmolive Co.,
 
 7 F3d 11 [2d Cir 1993]).
 

 Prior to enactment of the Retirement Equity Act of 1984 (Pub L 98-397, 98 US Stat 1426 [REA]), some courts questioned whether strict construction of ERISA’s anti-alienation provision required preemption of court-ordered support obligations insofar as such orders affected ERISA plan administration
 
 (see
 
 29 USC § 1056 [d] [1];
 
 see e.g. American Tel. & Tel. Co. v Merry,
 
 592 F2d 118 [2d Cir 1979]). REA largely settled the debate by providing an exception to the anti-alienation provisions of ERISA through the use of a qualified domestic relations order that meets the requirements of 29 USC § 1056 (d) (3) (B)-(E)
 
 (see
 
 29 USC § 1056 [d] [3] [A]).
 
 [1]
 
 In part, a QDRO is defined as a domestic relations order “which creates or recognizes the existence of an alternate payee’s right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan” (29 USC § 1056 [d] [3] [B] [i] [I]). A QDRO is exempted from ERISA’s preemp
 
 *402
 
 tion provisions and may be used to make dispositions of plan benefits to alternate payees
 
 (see
 
 29 USC § 1144 [b] [7];
 
 Carland v Metropolitan Life Ins. Co.,
 
 935 F2d 1114, 1119-1120 [10th Cir 1991],
 
 cert denied
 
 502 US 1020 [1991]). In this manner the interests of former spouses and dependent children may be balanced with those of the surviving spouse of a subsequent marriage
 
 (see Boggs v Boggs,
 
 520 US 833, 847 [1997]). Thus, a QDRO may serve as a plan document that changes the beneficiary designation of an ERISA-governed plan absent the filing of a plan beneficiary designation form
 
 (see Metropolitan Life Ins. Co v Bigelow,
 
 283 F3d 436 [2d Cir 2002]).
 

 Barbara A. does not dispute that the QDRO establishing a separate annuity in her favor meets ERISA’s technical requirements for exemption from preemption. She claims, however, that the QDRO failed to create a new beneficiary designation— and indeed, the QDRO does not refer specifically to plan death benefits, nor does it name any individual as a beneficiary. Barbara K., however, claims Barbara A. waived her right to be a beneficiary of her ex-husband’s death benefits when she entered into the 1998 QDRO. Unlike ERISA’s authorization of designation of beneficiaries through a QDRO, the statute does not address whether, or how, a party can challenge a designated beneficiary based on a claim of waiver. Further, the federal courts disagree as to whether ERISA even authorizes a claim of waiver.
 

 A majority of Federal Circuit Courts of Appeal have concluded, as did the Appellate Division in the present case, that waivers of beneficiary rights are possible under ERISAgoverned plans
 
 (see e.g. Manning v Hayes,
 
 212 F3d 866 [5th Cir 2000],
 
 cert denied
 
 532 US 941 [2001];
 
 Estate of Altobelli v International Bus. Machs. Corp.,
 
 77 F3d 78 [4th Cir 1996];
 
 Fox Val. & Vicinity Constr. Workers Pension Fund v Brown,
 
 897 F2d 275 [7th Cir 1990],
 
 cert denied
 
 498 US 820 [1990];
 
 Lyman Lbr. Co. v Hill,
 
 877 F2d 692 [8th Cir 1989]). According to this “common-law” view, the party challenging payment to the named beneficiary is permitted to show that the beneficiary executed a waiver that meets common-law requirements. Just as ERISA’s anti-alienation provisions do not preempt a valid QDRO from effecting a beneficiary designation, those provisions do not prevent a valid waiver of beneficiary interests
 
 (see Brandon v Travelers Ins. Co.,
 
 18 F3d 1321, 1324 [5th Cir 1994],
 
 cert denied
 
 513 US 1081 [1995]).
 

 As the Fifth Circuit noted in
 
 Manning v Hayes
 
 (212 F3d 866 [2000]), a “majority of the circuit courts to have considered the
 
 *403
 
 issue have recognized that ERISA does not expressly address the circumstances, if any, in which a non-beneficiary may avoid the payment of * * * benefits to the named beneficiary. For that reason, these courts have held that the issue is governed by federal common law. * * * Thus, * * * the determination of who is entitled to the proceeds of an ERISA plan providing * * * benefits may depend upon more than merely the plan documents, and may be properly defined by reference to * * * the particular facts of the case” (212 F3d at 870-871 [internal citations omitted]).
 

 In opposition to the waiver argument, Barbara A. relies upon
 
 Egelhoff v Egelhoff ex rel. Breiner
 
 (532 US 141 [2001]) and other federal cases, claiming that ERISA requires a plan administrator to determine the intent and status of a QDRO it receives
 
 (see
 
 29 USC § 1056 [d] [3] [G] [i]) and that a QDRO cannot provide for an option not otherwise provided under the plan
 
 (see
 
 29 USC § 1056 [d] [3] [D]). She argues that, based on these statutory commands, the United States Supreme Court determined that ERISA requires that a plan administrator discharge its duties
 
 solely
 
 in accordance with plan documents regardless of the variations and impact of state law.
 

 Only one Circuit Court has unequivocally adopted Barbara A.’s position
 
 (see McMillan v Parrott,
 
 913 F2d 310 [6th Cir 1990]).
 
 [2]
 
 That minority view, known as the “plan document” approach, would not permit any alteration of beneficiaries in an ERISA-governed plan except those that are specifically authorized by the statute. Thus, in the minority’s view, only a plan document, such as a plan-generated change of beneficiary form or a QDRO that meets ERISA requirements and expressly designates a new beneficiary, can change a beneficiary designation, and courts may not apply common-law doctrines such as waiver to override an otherwise valid beneficiary designation.
 

 As the instant case demonstrates, there are sound reasons to maintain the availability of a waiver claim, even in the area of ERISA-governed benefit plans. Strict application of ERISA requirements, while likely serving the ends of uniformity, may
 
 *404
 
 not serve the ends of fairness when it comes to effectuating the clear intent of parties to an agreement. Moreover, the weight of federal authority now favors the view that a named beneficiary may waive its rights as a designated beneficiary through a waiver that meets common-law requirements.
 

 [11 We conclude that a claim of waiver can be asserted against a designated beneficiary if the purported waiver meets certain common-law requirements. In that regard, the federal courts look to the statute itself, as well as state law consistent with the statutory scheme
 
 (see Fox Val. & Vicinity Constr. Workers Pension Fund v Brown,
 
 897 F2d 275, 281;
 
 Clift v Clift,
 
 210 F3d 268, 271 [5th Cir 2000]). The federal common-law requirements for a valid waiver have been expressed as a straightforward tripartite test: the waiver must be explicit, voluntary and made in good faith
 
 (see Manning,
 
 212 F3d at 874). These standards are generally consistent with New York’s waiver requirements in similar situations
 
 (see e.g. Doyle v Sullivan,
 
 176 AD2d 55 [1992];
 
 see also Matter of Abramovich v Board of Educ. of Cent. School Dist. 1 of Towns of Brookhaven & Smithtown,
 
 46 NY2d 450, 455 [1979],
 
 cert denied
 
 444 US 845 [1979]).
 

 We
 
 agree
 
 with the Appellate Division that, as a whole, the QDRO agreement effectuated a sufficiently specific waiver of Barbara A.’s rights to death benefits. Besides waiving rights against each other and their respective estates, the parties also agreed, in paragraph 3, that ownership of the newly created annuities would belong to Barbara A. exclusively, while all rights and interests in the remaining accumulations would belong to Silber. In addition, the QDRO states that it supersedes all prior orders, which includes the prior divorce judgment that required designation of Barbara A. as a 50% beneficiary of the death benefits. Any other rights of the parties arise solely under the 1998 QDRO. Finally, the QDRO creates a mutual waiver of claims between Barbara A. and Barbara K. Taken together, the various provisions of this agreement evince an understanding among the parties that the creation of a new annuity in favor of Barbara A., an annuity amounting to 45% of all accumulations — close to one million dollars — supersedes all prior agreements.
 

 There is little question that the agreement was entered into voluntarily by all parties. Barbara A.’s attorney contacted Silber’s representatives with the idea of entering into a new arrangement. The parties had divorced in 1985 and 13 years had elapsed. Silber had remarried and was still working.
 
 *405
 
 Barbara A. sought a present distribution rather than waiting for her ex-husband’s retirement or death. Moreover, as she conceded at a deposition, she did not expect to be a beneficiary of Silber’s pension plans after the creation of her own, separate annuity under the agreement. Finally, all three parties to the QDRO agreement were represented by counsel and there is no record evidence to indicate that any of them were acting in anything other than good faith.
 

 Application of the tripartite common-law test to the parties’ agreement contained in the 1998 QDRO demonstrates that Barbara A. Silber executed an explicit, voluntary and good faith waiver of all beneficial interests under her ex-husband’s TIAA-CREF plan. Thus, she waived her right to receive the death benefits upon the filing and acceptance of the QDRO, a plan document, by the plan administrator.
 

 Silber’s four children also appeal the decision of the Appellate Division. The children argue that, in the event their mother, Barbara A., is deemed to have waived her death benefits, they should be entitled to a share of the benefits based on their status as contingent beneficiaries. This position is defeated by the clear language of the TIAA-CREF contracts.
 

 With respect to priority of beneficiaries, the TIAA-CREF plan provisions state that, in order for members of a contingent class of beneficiaries to receive benefits, there must be no beneficiary living in a prior class. Thus, where there are two named primary beneficiaries, the absence of one such beneficiary through death, or in this case waiver, means the other primary beneficiary succeeds to the benefits as the remaining primary. The contingent beneficiaries do not take unless there is no one left in the primary beneficiary class. Silber’s last two beneficiary designations of May and June 1993, along with an internal TIAA-CREF memorandum, make clear that the children were designated as contingent beneficiaries. Thus, the effect of Barbara A.’s waiver of her beneficiary designation is to leave Barbara K. as the sole beneficiary.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Smith, Wesley, Rosenblatt, Graffeo and Read concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . 29 USC § 1056 (d) (3) (A) provides, “Paragraph (1) [anti-alienation provision] shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.”
 

 [2]
 

 . In
 
 Estate of Altobelli v International Bus. Machs. Corp.
 
 (77 F3d 78, 81 [1996]), the Fourth Circuit opined that
 
 Krishna v Colgate Palmolive Co.
 
 (7 F3d 11 [1993]) placed the Second Circuit in the minority view. In
 
 Krishna,
 
 the plan participant purportedly changed his ERISA plan beneficiary designation in a will. The issue distilled to a conflict between New York’s testamentary law and ERISA and did not involve a claim that the designated beneficiary waived his rights to payments. Thus,
 
 Krishna
 
 does not conflict with our conclusion here.