■ Sandra Kazel, Appellant, v Susana C. Kazel, as Administrator of the Estate of Robert Kazel, Deceased, Respondent. [770 NYS2d 240]—

Appeal from that part of an order of Supreme Court, Onondaga County (DeJoseph, J.), entered July 30, 2002, that denied plaintiff's application insofar as it sought to modify a qualified domestic relations order by awarding plaintiff a share of decedent's preretirement death benefits.

It is hereby ordered that the order so appealed from be and the same hereby is affirmed without costs.

Memorandum: Plaintiff, Sandra Kazel, was married to Robert Kazel for 28 years before their divorce in March 1991. At the time of the divorce, Robert was employed by Niagara Mohawk Power Corporation, for which he was still working upon his death at age 58 in March 2001. Following the death of Robert, who had remarried, plaintiff sought to share with Robert's widow in the preretirement death benefits payable pursuant to Robert's pension plan. Plaintiff was denied any share of those benefits on the ground that the qualified domestic relations order (QDRO) issued in conjunction with the judgment of divorce granted plaintiff an interest only in Robert's retirement annuity, and not in the death benefits. Plaintiff thereafter commenced this proceeding seeking to modify or supplement the QDRO by awarding plaintiff a share of the death benefits.

We conclude that Supreme Court properly determined that plaintiff is not entitled to share in the preretirement death benefits pursuant to the amended decision after trial and subsequent judgment of divorce. The amended decision states only that the "pension plan" was a marital asset, that the court heard testimony with respect to the "value of the pension interests," and that the pension interest shall be divided according to the formula promulgated by the Court of Appeals in *Majauskas v Majauskas* (61 NY2d 481 [1984]). The judgment of divorce ordered that the "pension plan . . . shall be divided according to the formula promulgated under [*Majauskas*]." Neither the amended decision nor the judgment of divorce refers to preretirement death benefits, and there was no evidence adduced at trial with respect to those benefits. The pension plan itself is not in the record and there is no proof that the court granting the judgment of divorce was aware that Robert's beneficiaries might be entitled to preretirement death benefits. "*Majauskas* can govern equitable distribution of preretirement death benefits earned during the marriage, but mere mention of *Majauskas* does not by itself establish the parties' intent to allocate those benefits" (*McCoy v Feinman,* 99 NY2d 295, 303

[2002]). The QDRO, which must comply with the terms of the judgment of divorce (*see Irato v Irato,* 288 AD2d 952, 952-953 [2001]), directed payment to the alternate payee, plaintiff herein, of her equitable share of an employee savings fund, which is not in dispute, and of a "pension plan." With respect to the pension plan, the QDRO provides that "[a]t such time as the Participant . . . has retired from and is actually receiving a monthly allowance from his . . . Pension Plan or, in the alternative, at the option of this Alternate Payee, after the earlier to occur of the first date for payments allowed under the plan or after the Participant reaches the earliest retirement age under the Plan . . . the Plan is directed to pay to [plaintiff], as Alternate Payee, fifty percent (50%) of a fraction of the Participant's monthly allowance . . . ." Because plaintiff did not seek to establish the value of the preretirement death benefits in the divorce action (*see Wojtowicz v Wojtowicz,* 171 AD2d 1073, 1073-1074 [1991]), and the court did not grant her a share in those benefits, we conclude that the court properly denied her application to modify the QDRO to award her a share of the preretirement death benefits.

All concur except Kehoe, J., who dissents and votes to reverse the order insofar as appealed from in accordance with the following memorandum.

Kehoe, J. (dissenting). I respectfully dissent and would reverse the order insofar as appealed from by granting plaintiff's application to the extent that it seeks to modify the QDRO by awarding plaintiff a share of the employer-provided pension death benefits of her ex-husband, Robert Kazel. I disagree with the majority's conclusion that plaintiff is not entitled to share in those preretirement death benefits pursuant to the provisions of the amended decision and judgment of divorce. The amended divorce decision recites that Robert's "pension plan" is, without exception or limitation, a "marital asset[ ]" to be "distribut[ed]" by the court, and it further recites that the court had "heard proof as to the value of the pension interests of [Robert] and [would] determine the percentage to be awarded to the plaintiff" pursuant to the formula promulgated by the Court of Appeals in *Majauskas v Majauskas* (61 NY2d 481 [1984]). Similarly, the divorce judgment "ORDERED, ADJUDGED AND DECREED, that [Robert's] pension plan . . . with Niagara Mohawk Power Corporation shall be divided according to the formula promulgated under [*Majauskas*], and this Court shall sign a separate [QDRO] pursuant to this Court's" decision. Clearly, the death benefit was a component of Robert's "pension plan" or "pension interests," concerning which the court had

heard proof and which it manifestly intended to distribute at the time of the divorce (cf. *Moran v Moran,* 289 AD2d 544, 545 [2001]; *Irato v Irato,* 288 AD2d 952, 952-953 [2001]). The original QDRO was thus in error insofar as it failed to award plaintiff a share of Robert's preretirement death benefits under *Majauskas.* I therefore would grant plaintiff's application in part and remit the matter to Supreme Court, Onondaga County, to modify the QDRO by awarding plaintiff a share of Robert's death benefits calculated pursuant to the formula of *Majauskas* (*see McCarthy v McCarthy,* 298 AD2d 977, 978 [2002]; *Irato,* 288 AD2d at 953).

The Court of Appeals' decision in *McCoy v Feinman* (99 NY2d 295 [2002]), cited by the majority and relied upon by defendant, is distinguishable. That case involved a claim for legal malpractice and focused on the date of accrual of the malpractice claim of a divorce litigant against her former attorney for failing to include in a stipulation of settlement any provision for equitable distribution of the other spouse's death benefits. In arriving at the terms of a stipulation of settlement, the parties to a matrimonial action are of course free to distribute or not distribute the marital assets as they agree (*see generally Silber v Silber,* 99 NY2d 395, 403-405 [2003], *cert denied* — US —, 124 S Ct 77 [2003]; *McCoy,* 99 NY2d at 303-305; *Kaplan v Kaplan,* 82 NY2d 300, 303 [1993]). By contrast, the court in a contested matrimonial action is required to equitably distribute the marital estate in its entirety (*see* Domestic Relations Law § 236 [B] [5] [c]; *see also* § 236 [B] [1] [c], [d]; *see generally DeJesus v DeJesus,* 90 NY2d 643, 647, 652 [1997]; *Burns v Burns,* 84 NY2d 369, 374 [1994]; *Olivo v Olivo,* 82 NY2d 202, 207 [1993]; *Majauskas,* 61 NY2d at 489). "[P]ension benefits or vested rights to those benefits, except to the extent that they are earned or acquired before marriage or after commencement of a matrimonial action, constitute marital property" (*Dolan v Dolan,* 78 NY2d 463, 466 [1991]). "[A] pension benefit is, in essence, a form of deferred compensation derived from employment and an asset of the marriage that both spouses expect to enjoy at a future date . . . . [C]onsidering such benefits to be marital property is . . . consistent with the concept of equitable distribution which rests largely on the view that marriage is, among other things, an economic partnership to which each party has made a contribution" (*id.,* citing *Damiano v Damiano,* 94 AD2d 132, 137 [1983]).

In reaching its decision, the majority necessarily concludes either that Robert's pension death benefits are not a form of deferred compensation earned in part during the marriage and

hence not a marital asset that the trial court was bound to distribute, or that the trial court failed in its obligations to equitably distribute Robert's pension death benefits. In either case, the majority's interpretation of what transpired at the time of the divorce contravenes a plain reading of the amended decision and judgment of divorce, both of which recite that the court had in fact heard evidence with respect to the value of the "pension plan" and "interests," and which distributed them without reserving the death benefits to Robert or otherwise exempting any part of the "pension plan" from the distribution made pursuant to *Majauskas*. There is thus no basis for the majority to infer that plaintiff did not seek a share of the preretirement death benefits, that plaintiff did not adduce proof concerning those benefits, or that the court did not in fact distribute them. In any event, where they are not to be distributed until maturity, vested pension benefits need not be valued by the parties and court in the same manner as other assets; it is sufficient for the court to set the appropriate percentage of the pension benefits to be awarded to the nontitled spouse upon application of the *Majauskas* formula (*see Koeth v Koeth,* 309 AD2d 786 [2003]; *Pratt v Pratt,* 282 AD2d 941, 943 [2001]; *Burgio v Burgio,* 278 AD2d 767, 769-770 [2000]; *Church v Church,* 169 AD2d 851, 851-852 [1991]; *Dawson v Dawson,* 152 AD2d 717, 720 [1989]). Indeed, in such a case, pension benefits generally cannot be fully and definitively valuated at the time of the divorce, certainly not as long as the employment is ongoing (*see Majauskas v Majauskas,* 94 AD2d 494, 497-498 [1983], *affd* 61 NY2d 481 [1984]). There is thus no factual or legal basis for the majority's determination to deny plaintiff a share of the preretirement death benefits, as calculated on the basis of her 28-year marriage to Robert. Present—Pigott, Jr., P.J., Pine, Wisner, Scudder and Kehoe, JJ.