*108
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 In November 1975, plaintiff, then 38, married decedent Nick G. Nicholas, then 45. They remained together, without children, until 1990 when they separated. In June 1995, they entered into a formal separation agreement and divorced later that year. The separation agreement provided:
 

 “3. Except as set forth herein, each party shall own, free of any claim or right of the other, all of the items of property, real, personal or mixed, of any kind, nature or description and wheresoever situate, which are now owned by him or her, or which are now in his or her name, or to which he or she is, or may be beneficially entitled to which may hereafter belong to or come to him or her with full power to him or to her to dispose of the same as fully and effectually in all respects and for all purposes as if he or she were unmarried. * * *
 

 “5.
 
 * * * b. The parties agree and acknowledge that any and all bank accounts, held jointly or otherwise * * * not specifically mentioned in this agreement, have been distributed equitably and to the mutual satisfaction of the parties, prior to the execution of this agreement. * * *
 

 “9. Each party hereby releases, waives and relinquishes any and all rights which he or she may now have or may hereafter acquire, as to the other party’s spouse under the present or future laws of any jurisdiction * * * to share in the estate of the other party upon the latter’s death * * *. This provision is intended to, and shall constitute a mutual waiver by the parties to take against each other’s wills * * * ”
 

 
 *109
 
 Nicholas died December 20, 1998. His will, a one-page document dated June 15, 1998, left 60% of his estate “of whatsoever nature and wheresoever may be situate” to his brother (the executor), and the remainder to his sister.
 

 During the marriage, decedent had deposited funds into five accounts in three banks, each “in trust for” plaintiff — an account commonly known as a Totten trust. After the parties separated, decedent continued to receive regular account statements and paid taxes on the interest generated. Decedent made no change to the accounts, which at the time of his death still named plaintiff as the beneficiary. Although at that time those accounts were worth approximately 36% of decedent’s taxable estate, he made no mention of them in his will.
 

 Plaintiff commenced this action against the three banks and decedent’s estate, seeking a declaratory judgment establishing her right to the accounts. She maintained that, in the absence of a valid revocation under EPTL 7-5.2 the accounts became her property upon decedent’s death, and that in fact neither she nor decedent intended the separation agreement to change her status as beneficiary. The estate counterclaimed, seeking a declaration that it owned the funds in question because plaintiff waived her right to the accounts in the separation agreement. Defendant Flushing Savings Bank, which had already turned over to the estate its share of the funds in question, cross-claimed against the estate.
 

 Supreme Court granted plaintiff’s motion for summary judgment, denied the estate’s cross motion and directed entry of judgment for plaintiff against Flushing Savings Bank for the amount it had paid the estate. The court confined its analysis to the issue of revocation, concluding that the separation agreement did not amount to a revocation of the Totten trusts under EPTL 7-5.2, and rejecting the estate’s waiver argument as inconsistent with the statute. As relevant here, the Appellate Division affirmed, similarly focusing exclusively on statutory revocation. Because we conclude that the separation agreement did not effect a revocation by decedent, or a waiver by plaintiff, we now affirm.
 

 A Totten trust — born a century ago in
 
 Matter of Totten
 
 (179 NY 112 [1904]) — is essentially an account which the depositor holds “in trust for” or “as trustee for” another person, the beneficiary. The trust may be revoked during the lifetime of the depositor by withdrawal of the funds or other affirmative acts, but if the depositor predeceases the beneficiary without
 
 *110
 
 revoking the trust, the beneficiary takes the balance of the funds at the time of the depositor’s death without the funds passing through the depositor’s estate. The account, in effect, is an alternative testamentary disposition.
 

 Simple though the . concept may be, in practice the Totten trust engendered substantial litigation, often with inconsistent results
 
 (see
 
 Preminger, Thomas, Frunzi and Hilker, Trusts and Estates Practice in New York § 2:7, at 2-14). Courts divided on such issues as whether the depositor completed the gift by giving the passbook to the beneficiary
 
 (compare Matthews v Brooklyn Sav.
 
 Bank, 208 NY 508 [1913] [not completed],
 
 with Matter of Farrell,
 
 298 NY 129 [1948] [completed]); the effect of oral statements of intent on modification, termination or revocation
 
 (compare Hessen v McKinley,
 
 155 App Div 496 [1st Dept 1913] [no modification],
 
 affd
 
 209 NY 532 [1913],
 
 with Tibbitts v Zink,
 
 231 App Div 339 [3d Dept 1931] [termination]); and apparent revocation in a will
 
 (compare Matter ofKrycun,
 
 24 NY2d 710 [1969] [no revocation],
 
 with Matter of Beagan,
 
 112 Misc 292 [Sur Ct 1920] [revocation]).
 

 To address the inconsistency in an area of law where certainty and predictability are especially important, in 1975 the Law Revision Commission recommended, and the Legislature enacted, part 5 of EPTL article 7, specifying the means by which a depositor could revoke, terminate or modify a Totten trust
 
 (see
 
 L 1975, ch 499; Mem of Law Rev Commn, 1975 McKinney’s Session Laws of NY, at 1535). Originally, EPTL 7-5.2 provided two ways to accomplish those
 
 objectives
 
 — during
 
 the depositor’s lifetime
 
 “only by means of, and to the extent of, withdrawals from or charges against the trust account made or authorized by the depositor” (EPTL 7-5.2 [1]), and
 
 in the depositor’s will
 
 only by means of “an express direction concerning such trust account, which must be described in the will as being in trust for a named beneficiary in a named financial institution” (EPTL 7-5.2 [2]). Absent such measures, the trust would terminate on a depositor’s death and title to the funds remaining in the account would vest in a surviving beneficiary free and clear of the trust (EPTL 7-5.2 [4]).
 

 In 1985, the Legislature amended the statute to permit another means of altering, or ending, a Totten trust. To relieve depositors of possible interest penalties on withdrawal resulting from federal banking regulation, the Legislature provided that a depositor could also revoke, terminate or modify the trust “by a writing which specifically names the beneficiary and the financial institution” (L 1985, ch 89, § 1;
 
 see also
 
 
 *111
 
 Sponsor’s Mem, 1985 NY Legis Ann, at 74). That writing, however, must be “acknowledged or proved in the manner required to entitle conveyances of real property to be recorded, and shall be filed with the financial institution wherein the account is maintained” (EPTL 7-5.2 [1]).
 

 Thus, the statute is clear and precise in prescribing the three ways by which a depositor can revoke a Totten trust: withdrawal of the funds, an express direction in a will and a qualifying writing filed with the bank.
 

 Here, as defendants concede, there was no statutory revoca-, tion by the depositor. The funds remained on deposit; there was no mention of the accounts in decedent’s will; and no document was filed with defendant banks. Defendants contend, however, that plaintiff waived her right as beneficiary in the separation agreement. We disagree. Although we conclude that a named beneficiary may waive the right to a Totten trust account, here the separation agreement is insufficient to effect that result.
 

 Recently, in
 
 Silber v Silber
 
 (99 NY2d 395 [2003]), we confronted an analogous question: where no change of beneficiary is made in pension plan documents, can a designated beneficiary waive the right to her ex-husband’s pension plan death benefits by an agreement incorporated into a qualified domestic relations order (QDRO)? There too the legislature — in that case, Congress, in the Employee Retirement Income Security Act of 1974 (ERISA) — had provided an explicit scheme to bring uniformity to an area of law that previously had been a patchwork of case law and statutes, including specific requirements for changing a beneficiary designation. For reasons of fairness in effectuating the clear intent of the parties to the QDRO, and following the majority of federal courts to address the issue, we concluded that a designated beneficiary can waive the right to pension plan death benefits so long as the waiver is explicit, voluntary and made in good faith. The QDRO in
 
 Silber
 
 met those criteria, and therefore constituted a waiver of beneficial interests in the pension funds.
 

 Guided by the same considerations of fairness in effectuating the clear intent of the parties, we conclude that a beneficiary also can waive rights in a Totten trust, so long as the waiver is explicit, voluntary and made in good faith. In this respect we agree with defendants that the provisions of EPTL article 7 governing
 
 a depositor’s
 
 revocation of a Totten trust do not prevent
 
 a beneficiary
 
 from freely and independently waiving
 
 *112
 
 such rights. We are satisfied, moreover, that the legislative concern for certainty and predictability in this area is sufficiently safeguarded by the requirement that any such waiver be explicit, voluntary and made in good faith. We thus honor the unequivocal intent of the parties as well as the letter and spirit of the statute.
 

 Here, however, the separation agreement is insufficient to effect a waiver. Defendants rest their claim largely on the broad language of paragraph 3 regarding the final division of “all of the items of property” owned by the parties, urging that the burden was on plaintiff to carve out her rights as beneficiary if she wished to preserve them. The requirement, however, is otherwise: there is no waiver of beneficiary status unless the waiver is explicitly made in the writing
 
 (compare Matter of Maruccia,
 
 54 NY2d 196, 205 [1981]). There is no explicit waiver here, and we decline defendants’ invitation to infer such a waiver from the broad language of the agreement.
 

 The most specific language of the agreement relied upon by defendants actually undermines their waiver argument. Paragraph 5 (b), dealing with “bank accounts * * * not specifically mentioned” in the agreement — which includes the Totten trust accounts — is reasonably understood to mean that it was to the parties’ “mutual satisfaction” that decedent remain the owner of those accounts and plaintiff remain the beneficiary. Significantly, the separation agreement does contain several specific waivers — of plaintiff’s rights to support and maintenance, life insurance, medical insurance and individual retirement accounts — but not the beneficial interest in the Totten trust. The parties’ mutual waiver of claims against each other’s estate in paragraph 9, furthermore, does not help defendants’ position because Totten trusts pass outside the estate.
 

 Finally, while defendants rely heavily on
 
 Silber,
 
 that agreement is easily distinguished from the separation agreement at issue here. In
 
 Silber,
 
 the divorce decree between Barbara A. Silber and Dr. Robert Silber required that she receive 25% of his retirement benefits and that he designate her as 50% beneficiary of his death benefits. Thirteen years later, Dr. Silber was still working and not receiving retirement benefits and, at the behest of Barbara A., the parties entered into a new agreement, incorporated into a QDRO, providing Barbara A. with immediate access to benefit payments. The agreement, which explicitly superseded the divorce decree, created new annuities in Barbara A.’s name (funded with 45% of the accumulations from Dr. Silber’s pension plan) and provided that “[a] 11 owner
 
 *113
 
 ship and interest in the balance of the accumulations” belonged to Dr. Silber. (99 NY2d at 399.) Though Dr. Silber died without changing the beneficiary designation on his pension plan, the intent of the parties was clear — to provide immediate payments out of the pension funds to Barbara A. in exchange for her waiver of any future right to the balance of the accumulations. Indeed, Barbara A. conceded that, after she entered into the QDRO, she did not expect to be a beneficiary of the pension funds.
 

 Unlike the QDRO in
 
 Silber,
 
 the separation agreement in the present case broadly and generally applies to all of the parties’ respective property, without addressing the accounts in dispute. There is no indication that the parties intended the agreement to affect plaintiff’s right as beneficiary of the Totten trusts at all.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Smith, Ciparick, Wesley, Rosenblatt, Graffeo and Read concur.
 

 Order affirmed, with costs.