28 Cal.Rptr.3d 282 (2005)
129 Cal.App.4th 380
ESTATE OF Thomas Kaye COLEMAN, Deceased.
John M. Barlow, Petitioner and Appellant,
v.
Jennifer Howard et al., Contestants and Respondents.
No. C046442.
Court of Appeal, Third District.
May 12, 2005.
*283 Sandra L. Johnson, for Petitioner and Appellant.
Cassinat Law Corporation, John E. Cassinat, Ronald L. Carello, and Jeffrey D. Brooks for Contestants and Respondents.
Certified for Partial Publication.[*]
BLEASE, J.
John Barlow, as executor of the will of decedent, Thomas Coleman, appeals from a judgment dismissing his petition to admit an unsigned copy of the decedent's will to probate.
Decedent's will, executed coincident with the execution of the Thomas Kaye Coleman and Jean Marilyn Coleman Declaration of Trust (Trust), as shown in the copy, gave all of his property to the Trust. Subsequent to the execution of the will and Trust, decedent and his wife, Jean Coleman, divorced and divided the property held by the Trust pursuant to a court order approving a marital settlement agreement.
Two of decedent's daughters, contestants Jennifer Howard and Kimberly Coleman, filed a summary judgment motion contesting the probate of the will. The motion was based on the sole ground the will made a disposition of property to a former spouse in contravention of Probate Code section 6122, which revokes the testamentary dispositions to a former spouse when the testator's marriage is subsequently dissolved or annulled.[1]
Barlow's opposition to the motion was not timely, and the trial court did not consider the opposition papers in rendering its decision. The trial court found no triable issues of material fact. It found the result of admitting the will to probate would be that decedent's former spouse would inherit the entire estate, in contravention of section 6122.
We shall conclude the Trust was revoked by the Colemans' marital settlement agreement and order thereon, which transferred the property out of the Trust and into the hands of each individual spouse. To the extent the will transferred property to the Trust, the transfer lapsed by virtue of section 6300, which provides that a revocation or termination of a trust before the *284 death of the testator causes the devise to lapse.
However, the will contained a default clause in the event the devise to the Trust lapsed. It incorporated the terms of the Trust in the will and directed that decedent's property be distributed pursuant thereto.
We shall conclude that under the provisions of section 6122 Jean Coleman may not inherit the decedent's property under the will or act as trustee under the terms of the Trust incorporated by the default clause of the will, and that she must be treated pursuant to section 6122 as having predeceased the decedent. The consequence is that the remainder of the terms of the will, which provide that the estate go to decedent's daughters, are valid, and the trial court incorrectly denied probate of the will.
Accordingly, we shall reverse the judgment and remand the cause to the trial court with instructions to determine whether decedent destroyed the original of the will with the intent of revoking it, and, if not, to enter judgment distributing the estate to decedent's daughters as provided in the will.

FACTUAL AND PROCEDURAL BACKGROUND
Decedent married Jean Coleman in 1972. They had three daughters, the two contestants and a third daughter, Robin Coleman.
On September 20, 1994, decedent executed a will. The will contained the following pertinent provisions. "THIRD: I give all of my estate to the Trustee of the THOMAS KAYE COLEMAN AND JEAN MARILYN COLEMAN DECLARATION OF TRUST, which I executed prior to the execution of this Will, and on the same date as the execution of this Will, in which Trust I am one of the Trustors and Trustees, to be added to and commingled with the trust property of that Trust, and held, administered and distributed, in whole or in part, as if it had been part thereof immediately before my death, in accordance with the provisions of that instrument and amendments made to it pursuant to its terms before my death."
However, the will contained a default clause, which provided: "FOURTH: If for any reason the foregoing bequest lapses or fails, I give, devise and bequeath the residue of my estate to the Trustee named in the Declaration of Trust referred to in Paragraph 3 of this Will, to be held, administered and distributed pursuant to the terms and provisions of the Declaration of Trust in the same manner as if such terms and provisions as presently existing had been set forth herein in full. [¶] FIFTH: I appoint the following to be my Executor in the order listed: [¶] 1. JEAN MARILYN COLEMAN [¶] 2. JOHN BARLOW [¶] 3. KIMBERLY MARIE COLEMAN...."
The trustees of the Thomas Kaye Coleman and Jean Marilyn Coleman Declaration of Trust were decedent and his wife, Jean Coleman. Upon the death of one of them, the survivor would become the sole trustee. Upon the death of both, the three daughters would become cotrustees and entitled to equal shares of the estate at the age of 30. At the time of the marital settlement agreement, the trust property comprised five parcels of real estate, two in Santa Clara County, and one in each of the following counties: Tehama; Shasta; and San Bernardino.
The Trust provided that upon the death of the first spouse, the trust would be divided into two trusts, a survivor's trust and a residual trust. The survivor's trust would consist principally of the surviving spouse's interest in the community estate *285 and her separate estate. The residual trust would consist of the balance of the trust estate, i.e., the deceased spouse's interest in the community property and his separate property. On the death of the first spouse, the surviving spouse would have the power to amend, revoke, or terminate the survivor's trust, but the residual trust could not be amended, revoked or terminated. The trust document provided the surviving spouse would receive the income from both trusts (and any requested principal) for her lifetime. Upon the death of the surviving spouse, the residual trust was to be distributed in equal shares to the Colemans' daughters.
Sometime after executing the will and trust documents, decedent filed a petition for dissolution of the marriage. Subsequently, he became completely disabled from a brain disease. By the time the marriage was dissolved in August 1996 a conservatorship had been established and contestants were appointed their father's coconservators.
The couple's property was divided pursuant to a court order approving their marital settlement agreement. Two of the real properties held by the trust were transferred to Jean Coleman as her sole and separate property, and three of the real properties held by the trust were transferred to decedent as his sole and separate property. The record contains quitclaim deeds showing that two properties previously held by the trust were deeded to decedent as his separate property. It is unclear from the record whether the other property was ever deeded to decedent, or whether the Thomas Kaye Coleman and Jean Marilyn Coleman Declaration of Trust deeded to Jean Coleman the two parcels of real property confirmed to her as her separate property by the marital settlement agreement.
Thomas Coleman died in June 2003. On July 29, 2003, Barlow, who is Jean Coleman's brother, filed a petition for the probate of a lost will and to be appointed executor. The petition attached an unexecuted copy of the will of Thomas Kaye Coleman and alleged on information and belief that decedent never revoked the will and never subsequently executed any other estate planning documents. The petition alleged "it is likely that the original signed and dated Will has either been destroyed or hidden [from] discovery by one or more of the Decedent's daughters due to their knowledge that their mother may inherit [from] their father's estate."
Contestants opposed probate of the will on the grounds the will had been destroyed by decedent with the intent of revoking it, and that, in any event, decedent divorced Jean Coleman following the execution of the will and consequently the will was revoked pursuant to section 6122. We set forth the pertinent terms of section 6122 in the discussion.
Contestants filed a summary judgment motion on the sole ground the will was revoked by operation of law in accordance with section 6122. Barlow filed an opposition to the motion two court days before the hearing. The only document the court received from the clerk by the date of the hearing was an opposing separate statement of facts, filed one court day before the hearing date.
Code of Civil Procedure section 437c, subdivision (b)(2) requires an opposition to the motion to be filed and served not less than 14 days before the hearing. For this reason the trial court did not consider the opposition papers in ruling on the motion. Nevertheless, a hearing was held, and the trial court heard and considered argument from Barlow's counsel.
The trial court granted contestants' motion for summary judgment, finding no *286 triable issue of material fact as to contestants' section 6122 objection. The court found Jean Coleman must be considered to have predeceased the decedent pursuant to section 6122. The court said: "As the will provides for the entire estate to go to the trust, the former spouse would in effect inherit the entire estate if the will were admitted to probate in contravention of section 6122."
The court denied the petition to admit the will to probate.

DISCUSSION

I[**]

II
As noted, contestants' summary judgment motion was based on the sole ground the will had the effect of making a disposition of decedent's property to his ex-wife, in contravention of section 6122. The trial court agreed.
Section 6122 provides in pertinent part:
"(a) Unless the will expressly provides otherwise, if after executing a will the testator's marriage is dissolved or annulled, the dissolution or annulment revokes all of the following:
(1) Any disposition or appointment of property made by the will to the former spouse.
(2) Any provision of the will conferring a general or special power of appointment on the former spouse.
(3) Any provision of the will nominating the former spouse as executor, trustee, conservator, or guardian.
..................
(c) In case of revocation by dissolution or annulment:
(1) Property prevented from passing to a former spouse because of the revocation passes as if the former spouse failed to survive the testator.
(2) Other provisions of the will conferring some power or office on the former spouse shall be interpreted as if the former spouse failed to survive the testator."
Barlow argues that the only part of the will that contravenes section 6122 is the nomination of Jean Coleman as executor of the will. He argues the will gives decedent's estate to the trustee of the trust, not to Jean Coleman, and this bequest is not revoked by section 6122. He claims the nomination of Jean Coleman as the trustee by the trust document is not affected by section 6122 because it is not a "provision of the will" as required by section 6122. He claims the transfer of property to Jean Coleman under the trust was not invalidated by section 6122.[2] We disagree.
We address the issue tendered by the appeal, whether the trial court erred in denying Barlow's petition to admit the will to probate for violation of section 6122. We asked the parties for supplemental briefing regarding the effect the order approving the Colemans' marital settlement agreement had on the Trust.
We shall conclude the trial court order, which effectively transferred the properties from the Trust to the separate property estate of each spouse, revoked the Trust, and pursuant to section 6300 caused the devise to the Trust to lapse.

III

Termination of the Trust
A revocable trust may be revoked by complying with the method of revocation *287 set forth in the trust instrument. (§ 15401.)
The declaration of trust provided: "During the trustors' joint lifetimes, either trustor may revoke all or any part of the trustors' community property held in the trust by a written instrument signed by either trustor and delivered to the trustee and the other trustor...."
The order approving the marital settlement agreement and the accompanying quitclaim deeds satisfy this revocation provision of the Trust. The marital settlement agreement was signed by both Jean Coleman and the conservators for the decedent. Since it was signed by both, delivery occurred.
The Trust provides that each trustor may revoke his or her interest in community property but is silent whether a spouse's interest in separate property may be revoked. All but one of the properties in the Trust was held by the parties as community property prior to the transfer to the Trust. The San Bernardino property was held by the decedent as his separate property prior to its transfer to the Trust. The only reasonable interpretation of the Trust document is that each trustor could revoke the Trust to the extent of his or her interest in the property held by the Trust. Otherwise, the Trust instrument would have the inequitable and nonsensical effect of allowing the trustors to revoke their interests in community property, but not their interests in their own separate property.
The parties manifested their intent to revoke the Trust's interest in the San Bernardino property when Jean Coleman transferred her interest in the San Bernardino property to the decedent as a part of the marital settlement agreement. The marital settlement agreement stated that Jean Coleman agreed "the following are the separate assets of HUSBAND to be confirmed to him as his separate property and WIFE disclaims and waives any and all right and interest in each of said asset: ... All right, title and interest in and to that real property commonly known as [the San Bernardino property]...."
A revocation occurs where the settlor makes a conveyance of the trust property out of the trust. (Bogert, Trusts & Trustees (2d rev. ed.1983) § 1001, p. 336.) If the trust reserves the power in the settlor to withdraw trust property from the trust, as here, the withdrawal terminates the trust as to the property withdrawn. (IV Scott on Trusts (4th ed.1989) § 330.11, pp. 370-371.) Where the property of the trust ceases to exist, there is nothing to which the trustee may hold legal title, nothing in which the beneficiaries may hold a beneficial interest, and there is no longer a trust. (IA Scott on Trusts (4th ed.1987) § 74.2, p. 434.)[3] It follows that the complete withdrawal of the trust property terminates the entire trust.
In the present case, both Jean Coleman and the deceased, as settlors and trustees, conveyed their interests in the Trust property to each other individually, revoking their interests in the trust property as settlors and trustees. This had the effect of revoking the Trust because there was no property left in the Trust.
The revocation of the Trust caused the decedent's devise to the Trust to lapse pursuant to section 6300. Section 6300 provides in pertinent part: "A devise, the validity of which is determinable by the law of this state, may be made by a will to *288 the trustee of a trust established or to be established by the testator or by the testator and some other person ... if the trust is identified in the testator's will and its terms are set forth in a written instrument (other than a will) executed before or concurrently with the execution of the testator's will...." Section 6300 has a pertinent exception. "Unless otherwise provided in the will, a revocation or termination of the trust before the death of the testator causes the devise to lapse." The "unless" clause refers to a provision in the will which specifically contemplates that the devise not lapse upon the termination of the trust. The Third provision of the will contains no provision directing that the devise not lapse in the event of a termination of the trust occasioned by the dissolution of the marriage.
However, the Fourth provision of the will generally contemplates the circumstance of a lapse of the devise to the Trust. It provides that in such event the decedent's estate shall be given to the trustee named in the declaration of trust referred to in the Third provision, to be administered and distributed pursuant to the terms of the trust document, which is incorporated in the will. Thus, the Fourth provision has the effect of establishing a testamentary trust, the terms of which are identical to the (now revoked) living trust. (See Cal. Will Drafting (Cont.Ed.Bar 3d ed.2004) § 8.6, p. 198.)
The trust terms, having been incorporated in the will, are subject to the restrictions set forth in section 6122. It revokes only those provisions of the will which provide for a disposition of the property to the former spouse or which confer some special power or appointment upon the former spouse. Section 6122 provides a statutory method for distribution of the property. Property prevented from passing to a former spouse because of the revocation passes as if the former spouse failed to survive the testator; and other provisions of the will conferring a power or office on the former spouse shall be interpreted as if the former spouse failed to survive the testator.
In this case, the provisions of the Trust appointing Jean Coleman trustee, granting her a power of appointment, or transferring any property or income from property to her are revoked by statute. Section 6122 provides that the terms of the Trust incorporated in the will shall be administered and distributed as though Jean Coleman had predeceased the decedent. In this manner the decedent's property is directed to be distributed pursuant to the 20th provision of the Declaration of Trust, incorporated in the will. It provides that the property shall be divided equally among the decedent's three daughters as each reaches the age of 30.[4]

*289 IV[***]

DISPOSITION
The judgment denying the petition to admit the will to probate is reversed. The cause is remanded to the trial court with directions to determine whether decedent destroyed the original of the will with the intent of revoking it, and, if not, enter judgment distributing the estate to decedent's daughters as provided in the will.[5]
Costs on appeal are awarded to respondents. (Cal. Rules of Court, rule 27(a)(4).)
We concur: SCOTLAND, P.J., and DAVIS, J.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of Part I and IV of the Discussion.
[1] References to a section are to the Probate Code unless otherwise indicated.
[**] See footnote *, ante.
[2] Because the Trust was created before January 1, 2002, section 5600, which invalidates nonprobate transfers to a former spouse, is inapplicable. (§ 5604.)
[3] The fiduciary relation between the trustee and beneficiary may continue with respect to the trustee's obligations to the beneficiaries, but it is no longer a relation with respect to property withdrawn from the trust. (IA Scott on Trusts, supra, § 74.2, p. 435.)
[4] The 20th provision provides in pertinent part as follows: "Upon the death of the Surviving Spouse, the trustee shall distribute the estate equally to KIMBERLY MARIE COLEMAN, JENNIFER DIANE COLEMAN and ROBIN KAY COLEMAN.... [¶] A. If any beneficiary has not yet attained the age of 30 years, his or her portion shall be held IN TRUST, with a separate trust for each such beneficiary. [¶] B. The primary purpose and intent in creating these trusts is to provide for the proper care, maintenance, support and education of the children of the Trustors. So long as they have not attained the age of 30 years, the Trustee shall pay to or apply for the benefit of each said child, as much of the income and principal of the trust as the Trustee, in his or her discretion deems necessary for said child's health, support, general welfare and education, including college and postgraduate study, so long as pursued to advantage by that child, or to assist said child in establishing or maintaining a business or profession [sic], or in the purchase of a home.... Any income not so distributed shall be accumulated and added to principal. [¶] C. When each said child reaches age 25, the Trustee shall distribute to her one-third of the balance of her Trust principal. Upon reaching age 28 one-half of the remaining balance of her trust principal shall be distributed to said child, and upon reaching age 30 the balance of her trust shall be distributed to each said child. [¶] D. The trustee hereinabove named shall have the right to terminate any trust herein created if the trustee shall determine that, due to the small size of the trust estate, the trust should be terminated; or if the trustee concludes that each said child beneficiary has demonstrated a level of maturity that it is probably that the trust moneys will be expended in a prudent manner...."
[***] See footnote *, ante.
[5] At oral argument counsel for contestants suggested they might not contest the validity of the will on remand to the trial court. In that event the will shall be admitted to probate.