Affirmed and Majority and Concurring Opinions filed July 10, 2007








Affirmed
and Majority and Concurring Opinions filed July 10, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00677-CV

____________

 

CAROLYN ANN LESIKAR MOON,
Individually and as Named Trustee of the CAROLYN ANN LESIKAR MOON SPECIAL TRUST, Appellant

 

V.

 

WOODY K. LESIKAR, Individually, as
Trustee of the WOODROW V. LESIKAR FAMILY TRUST, Trustee of the WOODY K. LESIKAR
SPECIAL TRUST, and Independent Executor of the ESTATE Of WOODROW V. LESIKAR;
WEST HOUSTON AIRPORT CORPORATION; SHELLY ANN LESIKAR, Individually and as
Trustee of the S&S TRUST; STACY JAYNE LESIKAR MARTIN, Individually and as
Trustee of the S&S TRUST; and the S&S TRUST , Appellees

 



 

On Appeal from the 149th
District Court

Brazoria County, Texas

Trial Court Cause No. 33,207

 



 

M A J O R I T Y   O P I N I O N








Appellant, Carolyn Ann Lesikar Moon, Individually and as
Named Trustee of the Carolyn Ann Lesikar Moon Special Trust appeals the summary
judgment granted in favor of appellees, Woody K Lesikar, Individually, as
Trustee of the Woodrow V. Lesikar Special Trust, and Independent Executor of
the Estate of Woodrow V. Lesikar; West Houston Airport Corporation; Shelly Ann
Lesikar, Individually and as Trustee of the S&S Trust; Stacy Jayne Lesikar
Martin, Individually and as Trustee of the S&S Trust; and the S&S Trust
(collectively AAirport Defendants@).  We affirm.  

                                                  Background

Carolyn Ann Lesikar Moon and Woody Lesikar are brother and
sister.  In January 1990, their father, Woodrow V. Lesikar (AMr. Lesikar@), established the
Woodrow V. Lesikar Family Trust (the AFamily Trust@), naming himself
and Woody co-trustees.  Mr. Lesikar placed in the Family Trust 10,000 shares of
stock in West Houston Airport Corporation (AAirport Stock@).  

The Family Trust provided that Mr. Lesikar would receive
all net income from the trust assets during his lifetime.  Upon Mr. Lesikar=s death, the trust
would become irrevocable, and separate special trusts would be created for
Woody, Carolyn, Margie Pugh Morgan (Mr. Lesikar=s wife), and his
grandchildren.  Woody=s special trust was to receive all the
Airport Stock, the grandchildren=s trusts were to
receive certain real property, and Margie=s trust was to
receive certain stock holdings, while the remainder was to be divided between
Woody=s special trust
and Carolyn=s special trust.  Mr. Lesikar reserved the right to
revoke the trust agreement or amend the trust by written notice to the
trustee.  In keeping with his right to revoke, in 1991, Mr. Lesikar revoked, in
writing, part of the Family Trust, removing Margie as a beneficiary.  

In 1997, Mr. Lesikar decided to transfer the 10,000 shares
of Airport Stock to a trust established for Woody=s children (Shelly
Ann Lesikar and Stacy Jayne Lesikar Martin)Cthe S&S
Trust.  On September 5, 1997, Mr. Lesikar wrote Carolyn explaining his
decision.  Mr. Lesikar also stated in that letter he was going to revise his
will to provide for Margie, he was asking Woody to have his will redrafted,
with input from Carolyn and Margie, and he might make other changes.  








On March 16, 1998, Mr. Lesikar signed a new trust agreement
that Amodifies, amends
and supersedes the Trust Agreement and any modifications and amendments
previous to the date of the signing hereof.@  The Amended
Family Trust was effective as of December 31, 1997.  The Amended Family Trust
placed Margie back in as a beneficiary.  Upon Mr. Lesikar=s death, $250,000
would be placed into a trust, with the income payable to Margie for her
lifetime.  Mr. Lesikar=s grandchildren would each receive
$10,000; Shriner Children=s Hospital would receive $50,000; and the
remainder would be divided equally between Woody and Carolyn and distributed to
their respective special trusts.  The Amended Family Trust did not mention the
distribution of the Airport Stock to Woody as the original trust had. 

Mr. Lesikar sold the Airport Stock to Woody for $2,000 for
the benefit of the S&S Trust.  On his 1997 federal income tax return, Mr.
Lesikar claimed a $191,228 loss from the sale, which he used to offset a
$1,674,203 gain from the sale of other stock.  Although the tax return, which
is dated February 24, 1998, states the sale of the stock took place on December
30, 1997, Mr. Lesikar did not receive the $2,000 until December 1998.  The
assignment of the Airport Stock to the S&S Trust is dated December 30,
1998.  

On January 28, 2001, Mr. Lesikar died thereby making the
Amended Family Trust irrevocable.  On August 19, 2003, Carolyn filed a petition
for construction of trust, declaratory judgment, accounting, appointment of a
receiver, and injunctive relief against the Airport Defendants.  Complaining of
the sale of the Airport Stock to Woody for $2,000 as an inadequate price,
Carolyn brought claims for negligence, breach of fiduciary duty, conversion,
and civil conspiracy against Woody, and civil conspiracy against the S&S Trust.


Carolyn, Woody, and the Airport Defendants moved for
summary judgment on the issue of the sale of the Airport Stock to Woody.  The
trial court denied Carolyn=s motion for summary judgment, and granted
Woody=s and the Airport
Defendants= motions for summary judgment.  The trial court
ordered the portion of the case relating to the sale of the Airport Stock
severed from the remainder of the case.  Carolyn appeals the denial of her
motion for summary judgment and the granting of the appellees= motions for
summary judgment. 

                                           Standard of Review








To prevail on a motion for summary judgment under 166a(c),
the movant must establish that no material fact issue exists and that it is
entitled to judgment as a matter of law.  Browning v. Prostok, 165
S.W.3d 336, 344 (Tex. 2005).  In conducting our review of the summary judgment,
we take as true all evidence favorable to the nonmovant, and make all
reasonable inferences in the nonmovant=s favor.  Diversicare
Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2005).  A defendant
is entitled to summary judgment on an affirmative defense if the defendant
presents evidence that establishes each element of the affirmative defense as a
matter of law.  Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 121
(Tex.1996).  When a trial court=s order granting summary judgment does not
specify the grounds upon which it relied, we must affirm the summary judgment
if any of the summary judgment grounds presented are meritorious.  FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 872B73 (Tex. 2000).  

                                                      Standing

In her tenth issue, Carolyn claims the trial court erred in
granting summary judgment in favor of appellees on the ground that she lacked
standing to complain about the sale of the Airport Stock because she had no
interest in it at the time of the sale.  Carolyn asserts, as a matter of law, the
1997 Amended Family Trust was in effect at the time of the sale of Airport
Stock.  Carolyn contends because the 1997 Amended Family Trust makes no mention
of the Airport Stock, it is part of the residuary to be divided between her and
Woody.  Clearly, if the 1990 Family Trust was in effect at the time of the
sale, Carolyn had no interest in the Airport Stock because the Trust
specifically provided Woody=s special trust was to receive the stock. 
However, even if the 1997 Amended Family Trust was in effect at the time of the
sale, for the reasons stated below, we conclude Carolyn has no standing to
challenge the sale of the Airport Stock.








Carolyn argues, as a beneficiary of the Amended Family
Trust, she has standing to bring this cause of action.  AAny interested
person may bring an action under Section 115.001 of this Act.@  Tex. Prop. Code Ann. ' 115.011(a)
(Vernon 2007) (emphasis added).  An Ainterested person@ is defined as Aa trustee, beneficiary,
or any other person having an interest in or a claim against the trust
or any person who is affected by the administration of the trust.@  Tex. Prop. Code Ann. ' 111.004(7)
(Vernon 2007) (emphasis added).  A Abeneficiary@ is Aa person for whose
benefit property is held in trust, regardless of the nature of the interest.@  Id. ' 111.004(2).  An Ainterest@ is Aany interest,
whether legal or equitable or both, present or future, vested or contingent,
defeasible or indefeasible.@  Id. ' 111.004(6)
(emphasis added).  

Carolyn, as a contingent beneficiary, would appear to meet
the definition of an interested person with standing to bring suit against a
trustee for breach of fiduciary duty. However, Mr. Lesikar, as settlor, was
empowered to revoke or amend the 1997 Amended Family Trust.  Until the death of
Mr. Lesikar, he was also the sole beneficiary of the 1997 Amended Family
Trust.  The question presented is whether a contingent beneficiary can complain
of a transaction by the settlor of a revocable trust, prior to the vesting of
her interest upon the death of the settlor.  By the cases the parties have
cited and our own research, it does not appear that Texas has addressed this
issue, but other jurisdictions have.  

In Hoescher v. Sandage, Thelma Warren created the
Thelma L. Warren Revocable Trust, which owned 67 percent of the family home and
farm, while her children owned 33 percent.  462 N.W.2d 289, 291 (Iowa Ct. App.
1990).  Thelma and a friend were named co-trustees.  Id.  Thelma and the
children mortgaged the home farm to secure an operating loan.  Id.  In a
foreclosure action against the trustees and the children, the bank acquired all
of the home farm except the homestead, and Thelma voluntarily revoked the
Thelma Trust.  Id.  The plaintiffs, who were two of children and their
spouses, sued Thelma=s co-trustee for fraud.  Id.  The
court noted that Thelma=s children possessed an interest in the
trust property which would vest only upon the discretion of Thelma.  Id.
at 294.  Under the terms of the Thelma Trust, as co-trustee and settlor
of the Thelma Trust, Thelma retained discretion to use her 67 percent of
the home farm Aas she pleased regardless of its inclusion in the
Thelma Trust.@  Id.  The court, thus, held the plaintiffs
lacked standing to attack the co-trustee about his actions in connection with
mortgaging the trust property.  Id.  








In In re Malasky, the Malaskys (Harry and Marion)
created a joint revocable living trust of which they were the trustees.  736
N.Y.S.2d 151, 152 (N.Y. App. Div. 2002).  When Harry died, another individual
replaced him as co-trustee.  Id.  Harry=s children from
his first marriage objected to the trust accountings.  Id.  Under the
trust document, the Malasky=s were the only persons who had an
interest in the income and principal of the trust during their respective joint
lives and the children had no pecuniary interest in the trust during this
period of time.  Id. at 152B53.  There was no
construction of the trust giving the children any interest until Harry=s death.  Id.
at 153.  During the lifetime of the settlors, they acted as trustees,
received income from the trust, and explicitly retained the power to revoke or
amend the trust at any time.  Id.  Therefore, the children had no
pecuniary interest in the revocable trust until Harry=s death and had no
right to an accounting for the period from the date the trust was created until
the date of Harry=s death.  Id.  

The court, in Siegel v. Novak, found the
beneficiaries of a revocable trust could challenge the disbursements made by
the trustee where someone other than the settlor made distributions from the
trust.  920 So. 2d 89 (Fla. App. 2006).  Rautbord executed an Amended and
Restated (Revocable) Agreement of Trust, with JP Morgan Chase Bank as trustee. 
Id. at 91.  Under the trust, all property would be divided among
Rautbord=s children.  Id. 
After creating the trust, Rautbord executed a durable power of attorney making
her daughter, Novak, her attorney-in-fact.  Id. at 92.  While Rautbord
was alive, Novak made large withdrawals from the trust through the power of
attorney; JP Morgan Chase Bank, as trustee, approved the withdrawals.  Id. 
Applying New York law, the Florida court of appeals, held Rautbord=s sons had
standing to challenge the withdrawals prior to Rautbord=s death because the
settlor and the trustee were not the same person.  Id. at 95.  Where
a person or entity different from the settlor removes property or money from a
revocable trust, those withdrawals could conceivably be made without the
settlor=s knowledge or
consent.  Id.  After the death of the settlor, the beneficiaries of a
revocable trust have standing to challenge pre-death withdrawals from the trust
which are outside the purposes authorized by the trust and which were not
approved or ratified by the settlor personally or through a method contemplated
by the trust instrument.  Id.  

We find the reasoning in Hoescher and Malasky
persuasive, and the reasoning in Siegel instructive.  Mr. Lesikar, who
was both settlor and trustee, had the power to revoke or amend the 1997 Amended
Family Trust.  We similarly conclude the vesting of the contingent benficiaries= interests was
subject to Mr. Lesikar=s discretion before his death.  








Carolyn complains the conveyance of the Airport Stock was
not in writing, in accordance with Section 112.105(c) of the Texas Property
Code, which provides A[i]f a trust was created by a written
instrument, a revocation, modification, or amendment of the trust must be in
writing.  Tex. Prop. Code Ann. ' 112.051(c)
(Vernon 2007); see also Runyan v. Mullins, 864 S.W.2d 785, 788 (Tex.
App.CFort Worth 1993,
writ denied) (quoting Restatement
(Second) of Trusts ' 331 cmt. d (1959)) (A>[I]f the Settlor
reserves a power to modify the trust only in a particular manner or under
particular circumstances, he can modify the trust only in that manner or under
those circumstances.=@).  

In Starcrest Trust v. Berry, the trial court found
the settlor=s execution of a deed of trust pledging certain trust
property to secure a loan, manifested the settlor=s intention to
revoke the trust.  926 S.W.2d 343, 352 (Tex. App.CAustin 1996, no
writ).  The court of appeals rejected the plaintiffs= argument that
there was no evidence to support the trial court=s finding because
there was no evidence of a formal written revocation of the trust under section
112.051(c) of the Texas Property Code, which requires that changes to a written
trust agreement also be in writing.  Id. at 353.  Instead, the court of
appeals stated the intent to revoke must be shown in the instrument used to
revoke, although it need not expressly refer to the power to revoke, and that
revocation occurred by the settlor=s conveyance of
the trust property to a third person.  Id. (quoting Bogert, The Law of Trusts and Trustees ' 1001).  








Carolyn argues Starcrest Trust is distinguishable
because the entire corpus of the trust in that case was conveyed out of the
trust.  We do not read Starcrest Trust as limited to factual scenarios
in which the entire trust corpus has been conveyed to a third party.  Instead,
we believe the reasoning of the Starcrest Trust applies equally to
cases, such as the one here, where the settlor has conveyed only part of the
trust corpus to a third party.[1] 
We conclude Mr. Lesikar showed his intent to revoke the Family Trust with
respect to the Airport Stock by his conveyance of that stock to the S&S
Trust.  

Carolyn further complains Mr. Lesikar did not provide
written notification of revocation to himself or Woody, as trustees, as
required by the 1997 Amended Family Trust:  

10.1  While the
Settlor is living, he may revoke this Trust Agreement by written notice to the
Trustee.  The Settlor may amend this Trust Agreement by written notice to the
Trustee (unless waived); provided, however, the Trust Agreement may not be
amended to change the obligations, duties, or rights of the Trustee without the
written consent of the Trustee.  

When the trustee is also the settlor of the revocable
trust, the settlor is not required to serve written notice on himself.  See,
e.g., Argo v. Moncus, 721 So. 2d 218, 222 (Ala. Ct. App. 1998) (holding
settlor/trustee was not required to give written notice to herself that she was
deeding her home to another); Paul, 123 P.3d at 809B10 (refusing to
impose a technical requirement that the settlor/grantor deliver written notice
to himself).  AIt would be absurd to require the settlor to call
himself up on the telephone as trustee and tell himself that he is revoking the
trust.  It would be equally absurd to have the settlor send himself a letter as
trustee to inform himself as trustee that the trust is terminated.@  Barnett v.
McNulty, 516 P.2d 583, 586 (Ariz. Ct. App. 1973).  Similarly, we see no
reason to impose this technical requirement when Mr. Lesikar was both settlor
and trustee and he effectuated the sale of the Airport Stock in his capacity as
trustee of the 1997 Amended Family Trust.  








We conclude that because Mr. Lesikar was the settlor of the
trust with the power to revoke the trust, the sole beneficiary of the trust
while alive, and co-trustee of the trust, Carolyn has no standing to complain
of Mr. Lesikar=s disposition of Family Trust assets, including the
Airport Stock.  The court did not err in granting Woody=s and the Airport
Defendant=s motion for summary judgment and denying Carolyn=s motion for
summary judgment.  Carolyn=s tenth issue is overruled.[2] 


Accordingly, the judgment of the trial court is affirmed.  

 

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Majority and Concurring Opinions filed July 10, 2007.

Panel consists of
Justices Anderson, Hudson, and Guzman.  (Guzman, J. Concurring.)









[1]  Other jurisdictions hold the transfer of trust
property out of the trust is a revocation to the extent of that property.  See,
e.g., In re Estate of Coleman, 28 Cal. Rptr. 3d 282, 287 (Cal. Ct. App.
2005) (AIf the trust reserves the power in the settlor to
withdraw trust property from the trust, as here, the withdrawal terminates the
trust as to the property withdrawn.@); Siegel,
920 So. 2d at 95 (A[A] settlor/trustee=s
withdrawal of funds from a revocable trust is tantamount to a revocation or
termination of the trust with respect to the funds withdrawn.@); Paul v. Arvidson, 123 P.3d 808, 811 (Okla.
Civ. App. 2005) (A[Settlor/trustee=s]
acts of creating a conflicting trust that was meant to include all of his
property and then specifically conveying the subject property to that Trust by
General Warranty Deed is clear evidence of his intent to revoke Trust No. 1 as
to that property.@).  

 

Additionally, a number of commentators
have reached the same conclusion.  See, e.g., George Gleason Bogert, The Law of Trusts and Trustees ' 1001, p.336 (Rev. 2d ed. 2005) (ARevocation may be held to have occurred by means of a
conveyance by the settlor to a third person that covers the trust property.@); Austin Wakeman Scott,The Law of Trusts '
330.11, p.371 (1989) (AWhere [the settlor] simply reserves a power in general
terms to revoke the trust, he ordinarily has power to revoke it in part by
withdrawing some of the property from the trust.@); Restatement (Third) of Trusts
' 63ctm. e (1991) (AA
power simply to revoke the trust, however, is interpreted as including also the
power to revoke the trust in part, thus allowing withdrawal of some rather than
all of the property from the trust, if that is all the settlor wishes to do.@); 76 Am. Jur.
2d Trusts ' 76 (AThe revocation
of a trust may be held to have occurred by means of a conveyance by the settlor
to a third person that covers the trust property.@).  





[2]  Because of our disposition, we need not address the
other issues raised on appeal.